102 N.J. Super. 451 (1968)
246 A.2d 146
JERSEY DOWNS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE DIVISION OF NEW JERSEY RACING COMMISSION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued August 23, 1968.
Decided August 27, 1968.
*453 Before Judges CONFORD, LEWIS and COLLESTER.
Mr. Charles J. Milton argued the cause for plaintiff (Messrs. Milton, Keane & DeBona, attorneys; Messrs. David P. Donnelly and John Wefiing, on the brief).
Mrs. Marilyn L. Schauer, Assistant Attorney General, argued the cause for defendant (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Elias Abelson, Deputy Attorney General, of counsel; Messrs Samuel D. Bornstein and Stephen Weiss, Deputy Attorneys General, on the brief).
PER CURIAM.
This appeal has been brought to review the refusal of the New Jersey Racing Commission to process for consideration an application by appellant filed July 31, 1968 for an original permit to conduct a harness race meeting in the Township of North Bergen, County of Hudson. The refusal was based on the advice of the Attorney General that under N.J.S.A. 5:5-39.1 the Commission was without authority in the matter.
The cited section of the racing law provides, among other things, "that the same public question [whether race meetings shall be permitted in a county] shall not be submitted to the legal voters of the same county oftener than once in five years." A referendum occasioned by a provisional permit granted appellant by the Commission in 1967 for a harness race meeting in the Town of Secaucus, Hudson County, was defeated at the general election that year as a result of an adverse poll thereon by the voters of Secaucus, although approved by the voters of the county at large. This had the effect of defeating the 1967 application, as the statute requires a county referendum as a condition of ratification of any provisional original permit granted by the Commission, *454 and further declares that in the event that a majority of the votes cast in either the county or the municipality where the race meeting is proposed to be held shall have been cast against the public question the provisional license shall be cancelled. N.J.S.A. 5:5-39.1.
Appellant has mounted several constitutional attacks against the statute as interpreted by the Attorney General, and initially suggests these questions can be avoided if the statutory five-year moratorium aforementioned is held not applicable on the ground that the proposed 1968 referendum would concern a different "public question," because involving a track in a different municipality from Secaucus. This approach cannot be indulged as the statute itself (N.J.S.A. 5:5-39.1) frames the public question for all such referenda as:
"Shall ... (insert running race meetings or harness race meetings, as the case may be) be permitted in the county of ... (insert name of county)?"
The statutory intent is thus seen to be to pose to the county voters the question whether the county should have a race meeting, whether of the "running" or "harness" variety. The fact that only the proposition of a Secaucus meeting was pending before the Commission is irrelevant to the correctness of the thesis that it was the object of the Legislature to have the county voters determine whether there should be a race meeting in the county. Also irrelevant to the issue as to what public question the voters were passing upon is the circumstance that the Legislature in the same statute ordained for itself (not leaving the matter to the voters, whether of Secaucus or the county) that the pending application should be denied if a majority of the voters, either of the town or of the county, should vote against the public proposition (i.e., whether the race meeting should be permitted in the county).
We also disagree with appellant's argument that unless the previously discussed contention is accepted the statute *455 is rendered unconstitutional because it "gives the Town of Secaucus a veto power over Hudson County in determining whether a question concerning harness racing should be placed on the ballot within the next five years." This effect, so it is argued, amounts to a delegation of legislative power in contravention of the Constitution.
Preliminarily, neither side disputes that no improper delegation of legislative power occurs by mere reason of the fact that a general statute renders its incidence in a subordinate governmental jurisdiction subject to popular referendum of the voters therein. Paul v. Gloucester County, 50 N.J.L. 585 (E. & A. 1888); Noonan v. Hudson County, 52 N.J.L. 398 (E. & A. 1890); Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 231 (1960). But appellant contends that here there is the fatal flaw that the Legislature has delegated to the Secaucus voters the determination whether or not there shall be a five-year moratorium in the entire county.
We are satisfied that the Attorney General provides the dispositive answer to the contention when he points out that it is the Legislature itself, and not the voters of Secaucus, which has established the moratorium. There is not a word about any moratorium in the public question voted upon by the Secaucus voters  which question, as noted above, is, by express direction of the Legislature, whether there shall be a harness race meeting in Hudson County. The distinct identity and nature of the five-year hiatus in referenda declared by the Legislature, as contrasted with the nature and object of the particular referendum held in 1967, is highlighted by the circumstance that under the statute the moratorium applies whether or not the initial referendum carries. There is an absolute, unqualified prohibition of a submission to the voters of "the same public question" more often than once in five years. In other words, there could not be a referendum for a race meeting anywhere in Hudson County for five years even if the 1967 referendum had passed. We find no merit in appellant's argument that the *456 moratorium is intended to apply only in the event of a defeat of the initial referendum.[1]
It is of course true that by virtue of the concomitantly operative legislative cancellation of a provisional permit in the event of a defeat of the public question by the voters of either the municipality or the county, the practical effect of the defeat of the question by the Secaucus voters in 1967, in combination with the legislative prohibition of a referendum in a county more often than once every five years, was to preclude any other race meeting in the county for five years. But this is a far cry from condemning the statute on the asserted constitutional ground that the Legislature has left it to the Secaucus voters to vote upon and determine the question, as formulated by appellant's brief, whether "the voters of Hudson County [shall] be faced with a public question during the next five years concerning the running of a harness race meeting." This was not the question posed to the Secaucus voters in 1967, either in form or substance. The statute itself absolutely forbade any further referenda for five years, regardless of how the 1967 referendum came out. Even were the statute construed (improperly  we believe) as imposing the moratorium only in the event of a defeat of a referendum, it would still be unsound to say that the voters of Secaucus, rather than the Legislature, had decided the question of the incidence of the moratorium.
The out-of-state cases cited by appellant are all plainly distinguishable on their facts and require no discussion.
We point out, incidentally, that appellant makes no argument (indeed, concedes the contrary) that there was any invalidity in the statutory provision for cancellation of the 1967 permit by reason of the adverse poll of the Secaucus voters.
*457 Appellant next urges that the statute arbitrarily creates two classes of voters, county voters and Secaucus voters, and gives the latter "veto power" over the former, thereby depriving the former of the equal protection of the laws. Passing the question whether appellant has status to assert the rights of Hudson County voters, the underlying assumption in the argument is that the 1967 referendum "implicitly" posed to the voters the question whether a five-year moratorium should be imposed on race meetings in all of Hudson. We have already indicated our conclusion that this assumption is without foundation. The argument therefore falls.
Apart from the narrow basis for appellant's argument just discussed, there is no other tenable ground for the position that there was anything invidious, unreasonable or arbitrary about the legislative policy decision for a five-year hiatus between county referenda on horse-race meetings. The business of racing and the legalized gambling attendant thereupon are strongly affected by a public interest, and close legislative regulatory supervision is highly appropriate. State v. Garden State Racing Ass'n, 136 N.J.L. 173, 175 (E. & A. 1947). It was not irrational for the Legislature to give the people of a county a five-year respite between referenda for the establishment of a new racetrack, with all that such an enterprise entails. There is a heavy presumption of validity of the statute, and we do not find it overcome in respect of the argument advanced by appellant.
Finally, appellant argues that the statutory moratorium, as allegedly triggered by the result of the 1967 referendum, is unconstitutionally violative of the "one man-one vote" principle of the Fourteenth Amendment adjudicated in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and subsequent decisions along that line. It is asserted that the vote of one Secaucus voter outweighs that of 22 voters elsewhere in the county.
*458 Assuming that the principle of Reynolds v. Sims would in an appropriate instance apply to popular referenda, we are clear that it does not have any pertinence here. We have already been at pains to demonstrate that the Secaucus voters were not vested by the Legislature with the responsibility of deciding whether or not the moratorium should take effect  that this was a policy decision embedded in the statute. The voters of Secaucus were not, by virtue of the statute, placed in any more powerful or determinative position than those of any other municipality in the county insofar as concerns the possibility of race meetings in years subsequent to the initial referendum year. As already noted, appellant elsewhere in its brief expressly concedes the reasonableness of the legislative cancellation of the 1967 permit on the contingency of the adverse poll in the municipality most directly affected. We see no other respect in which there is by virtue of this statute any violation of the "one man-one vote" principle.
The determination of the Racing Commission is affirmed.
NOTES
[1] Senate Bill No. 681 of the 1968 legislative session would have afforded an opportunity for a second application and referendum for a harness track in the same municipality the year following a referendum defeat, but it has failed of passage thus far.