126 N.J. Super. 187 (1974)
313 A.2d 618
FRANK J. COSTANZO, JR., APPELLANT,
v.
NEW JERSEY RACING COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 23, 1973.
Decided January 4, 1974.
*189 Before Judges LEONARD, ALLCORN and CRAHAY.
Mr. August J. Landi, Ocean-Monmouth Legal Services, Inc., attorney for appellant (Mr. Vincent A. Lloyd, on the brief).
Mr. George F. Kugler, Jr., Attorney General, attorney for respondent (Mr. Clinton E. Cronin, Deputy Attorney General, of counsel; Mr. James F. Mulvihill, Deputy Attorney General, on the brief).
The opinion of the court was delivered by ALLCORN, J.A.D.
Appellant here appeals from a determination of the New Jersey Racing Commission which affirmed a ruling of the Board of Stewards of Freehold Raceway, revoking an owner's license theretofore issued to appellant.
*190 The Commission predicated the revocation on the following stated grounds:
(A) You are not in membership with the United States Trotting Association;
(B) You falsified your application regarding an ejection at Bay State Raceway [Massachusetts] in violation of New Jersey Harness Racing Rule Chapter 7 Rule 2; and
(C) That based upon your arrest record and association with persons of questionable character the New Jersey Racing Commission in accordance with Chapter 7 Rule 3 of the New Jersey Harness Rules and Regulations has determined that granting you a license would not be in the best interest of racing in this State.
At the very outset we take note that the underlying statute does not either expressly or by implication invest the Commission with the authority to delegate to the "Board of Stewards" or to any one else, the power to revoke a license.[1] By the terms of the statute, the Commission is granted "full power * * * to revoke or refuse to issue a license," if deemed to be in the public interest. N.J.S.A. 5:5-33. And the procedure to be followed in the case of license revocation is spelled out in detail under the provisions of N.J.S.A. 5:5-51 to 5:5-61, inclusive  all of which speak of and to license revocation by the "commission." If there were any doubt remaining, it is dispelled by the provisions of N.J.S.A. 5:5-55, which authorize the Commission, "by order, [to] refer to one * * * of its members the duty of taking testimony in a matter pending before it, and to report thereon to the commission," followed by the express restriction that "no determination shall be made therein except by the commission." Cf. Mercer County, etc. v. Alloway, 119 N.J. Super. 94 (App. Div. 1972), *191 aff'd 61 N.J. 516 (1972). Accordingly, the action of the "Board of Stewards of the Freehold Raceway," revoking the appellant's license in the first instance, is meaningless and a complete nullity.
Notwithstanding, and as noted earlier, the Commission, as such, does have the authority to revoke an owner's license, on notice and hearing. N.J.S.A. 5:5-51 to 5:51-61, inclusive. And, inasmuch as the revocation by the Commission in this cause was attended by all of the constitutional, statutory and other safeguards inherent in the requirements of due process (including a full hearing, on notice), no harm or adverse effect has resulted to appellant therefrom. Consequently, we will consider the appeal on its merits  as, in fact, it has been presented and briefed by both sides.
Appellant asserts, first, that the Commission may not lawfully require, as a preliminary qualification to the granting of an owner's license, membership in the United States Trotting Association and, thus, may not revoke on said ground a license theretofore issued. It is plain that the specific legislative delegation to the Commission to issue licenses to owners and others "pursuant to such rules and regulations as the commission may adopt," N.J.S.A. 5:5-33, contains no reference whatever to membership in or to compliance with the rules and regulations of the U.S.T.A. The Commission argues, however, that such authority is plainly granted under the provisions of N.J.S.A. 5:5-30, which authorizes the Commission to "prescribe rules, regulations and conditions under which all horse races shall be conducted," and directs that every permit issued for the running of a harness race shall contain the condition, among others, that "all harness races shall be subject to the reasonable rules and regulations from time to time prescribed by the United States Trotting Association" (except where modified or abrogated by the Commission); and that Rule 26, section 1 of the U.S.T.A. stipulates that "in order to register *192 a horse the owner thereof must be a member of this Association."
We seriously question whether this specific legislative adoption of the rules and regulations of the U.S.T.A. with regard to race meetings, by reference, may be read into and utilized by the Commission in the exercise of the power conferred upon it to grant and to revoke licenses to owners. Moreover, any such interpretation would render the statute invalid as an improper delegation of legislative power. For, in making membership in the U.S.T.A. a prerequisite to the issuance of a state license, the Association (a private organization) would be thereby effectively enabled to exercise a veto in regard to a function that inheres exclusively in the legislative branch of the State Government  worse still, without any guiding standards prescribed by the Legislature, by which the exercise of such veto power might be measured and controlled. Group Health Ins. of N.J. v. Howell, 40 N.J. 436, 446-447 (1963).
As stated by the New York Court of Appeals in striking down a statutory grant of authority to the Jockey Club to issue state licenses to horse owners and others (Fink v. Cole, 302 N.Y. 216, 97 N.E.2d 873 (1951)):
In our view the delegation by the Legislature of its licensing power to The Jockey Club, a private corporation, is such an abdication as to be patently an unconstitutional relinquishment of legislative power in violation of section 1 of article III of the Constitution of this State which provides: "The legislative power of this State shall be vested in the Senate and Assembly." * * * (97 N.E.2d at 876; [citations omitted]
For these reasons, non-membership in the United States Trotting Association does not constitute a valid ground upon which to predicate either refusal of the issuance of an owner's license or revocation of such license once issued. We do not pass upon the right of the individual track owner or operator to bar from participation in the *193 trotting races conducted by it, the horse of an owner who does not hold membership in the U.S.T.A.[2]
We turn now to the remaining findings of the Commission. Under (B), the Commission found that the appellant falsified his applicaton for an owner's license, when he stated that his ejection from Bay State Raceway had "been clear[ed] H.T.A. Mr. Duke." The record discloses substantial credible evidence before the Commission to warrant said finding.
It should be here noted, parenthetically, that appellant's falsifications were not limited to that instance alone. An examination of the testimony given by him at the hearing discloses that appellant there testified falsely as to his lack of knowledge and receipt of notification of the denial by the U.S.T.A. of his application for membership in that Association. It reveals also that appellant swore falsely in his membership application to the U.S.T.A., when he denied ever having been arrested. Nor can the latter falsification be explained as having been the result of appellant's confusion in distinguishing the difference in meaning of the terms "arrest" and "conviction"  for the record shows the jurat on the application to be dated July 5, 1972, slightly more than two months after the distinction between the two terms had been fully explained to the appellant at his meeting with Mr. Duke of Harness Track Security, Inc., in late April or early May 1972.
Under item (C) the Commission found that appellant's "arrest record and association with persons of questionable character [was such] that granting you a license would not be in the best interest of racing in this State." The evidence introduced at the hearing revealed ample proof of appellant's association with persons who had been convicted of crime. The circumstance that one of said persons *194 was the father and another the brother of appellant, in no way excuses or lessens the impropriety or the significance of the association.
The proofs further disclosed (and the appellant acknowledged) that within the span of seven years appellant had been arrested on seven or eight occasions, on various charges including first degree murder and robbery, illegal possession of a weapon, assault on a police officer, automobile larceny, passing counterfeit money, and possession of drugs and drug paraphernalia. There was no evidence that appellant had been convicted of any of said charges, and appellant testified that all of them ultimately had been dismissed.
It has long been settled that arrest and indictment of a person, without conviction, is not an acceptable index of character. This, on the theory that an accusation of misconduct is "quite consistent with innocence, and * * * is merely * * * somebody's hearsay assertion as to the * * * guilt" of the person accused, 3A Wigmore on Evidence (Chadbourn rev. 1970), § 980a at 835. Compare, New Jersey Evidence Rule 47; State v. LaPorte, 62 N.J. 312, 319-320 (1973); Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). A fortiori, where the accusation has been dismissed. Consequently, we conclude that the arrest record of the appellant could not be properly considered by the Commission as a factor in its assessment of the moral character of the appellant as it affected the "best interest of racing in this State."[3]
*195 Even though we are satisfied that the proven falsification on the application for an owner's license and the proven association by the appellant with persons convicted of crime, by themselves may furnish adequate reasons for the revocation of appellant's license, such determination must be made initially by the Commission rather than by this court. Higgins v. N.J. Bureau of Securities, 100 N.J. Super. 266 (App. Div. 1968). To that end, the case will be remanded to the Commission.
Inasmuch as the matter must be remanded, we take occasion to note that counsel for appellant should be afforded an opportunity to examine the reports of Harness Tracks Security, dated May 12, March 2 and February 7, 1972 (from which the source or sources of the information set forth may be deleted, should the Commission deem it necessary), and to introduce evidence refuting any matters contained in said reports concerning appellant and his activities as to which no evidence was received at the original hearing before the Commission. The determination of the Commission shall be made on the basis of the record of the original hearing and any additional evidence presented by the appellant with respect to the reports.
Accordingly, the action of the Commission revoking on the grounds stated in its determination the owner's license issued to the appellant is set aside, and the cause is remanded to the Commission for further proceedings consistent with this opinion. Pending final determination by the Commission, appellant's license (if still effective, it having been issued only for one year) shall remain in suspension. No costs to either party.
NOTES
[1] Indeed, neither the provisions of the underlying statute (N.J.S.A. 5:5-22 et seq.) nor the rules and regulations promulgated by the Commission (N.J.A.C. 13:71-1 et seq.) creates or authorizes the creation of a "Board of Stewards."
[2] See Martin v. Monmouth Park Jockey Club, 145 F. Supp. 439 (D.N.J. 1956), aff'd 242 F.2d 344 (3 Cir.1957); Garifine v. Monmouth Park Jockey Club, 29 N.J. 47 (1959).
[3] The Commission's own rules and regulations restrict denial of issuance or revocation of a license to the applicant or licensee who has been "convicted of a crime in any jurisdiction." N.J.A.C. 13:71-4.2(a)(1).

Compare Martin v. Monmouth Park Jockey Club, 145 F. Supp. 439 (D.N.J. 1956), aff'd 242 F.2d 344 (3 Cir.1957), upholding the exclusion of a jockey by the owners of a track because of his record of arrest and of violations of riding rules. The court there said (145 F. Supp. at 441):
In a sport where the greatest importance should attach to dissipating any cloud of association with the undesirable, and in which the appearance as well as the fact of complete integrity is of paramount consideration, to exclude plaintiff from riding because of his record was an understandably warranted exercise of discretion.