158 N.J. Super. 182 (1978)
385 A.2d 925
EVELYN E. NIGLIO, APPELLANT,
v.
NEW JERSEY RACING COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1977.
Decided March 29, 1978.
*184 Before Judges FRITZ, BOTTER and ARD.
Mr. Ralph J. Pocaro argued the cause for appellant.
Ms. Claire L. Calandra, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. James Mulvihill, Deputy Attorney General, of counsel).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Appellant's license to race a horse she owned was suspended, following a hearing before a state steward, on the ground that a "spouse of a disqualified person is likewise barred from participating in racing." It is not controverted that appellant's husband, with whom she is living and by whom she is employed as a secretary-book-keeper, has been convicted of criminal offenses on two occasions. She appealed to the New Jersey Racing Commission and was accorded another hearing. With the copy of the hearing officer's report she was advised of her right to file exceptions or objections to the report. It would appear that she did not avail herself of this opportunity. Thereafter, and in accordance with the findings of the hearing *185 officer, the Commission suspended her license "in accordance with New Jersey Racing Commission Harness Rule, Chapter 4, Section 9,[1] which states, `The spouse of a disqualified person is likewise barred from participating in racing.'"
Before us she complains that this decision violated the rights provided her by N.J.S.A. 37:2-1 et seq. guaranteeing certain rights to married persons; that chapter 4, section 9 of the harness racing rules is arbitrary and unconstitutional, and that the ultimate decision was a nullity "[s]ince the appellant and his [sic] attorney were not notified and did not attend the final hearing before all of the members of the Racing Commission." We find these issues without merit and affirm.
Appellant's brief asserts that the Married Persons Act "clearly allows Mrs. Niglio to own a horse in her own name," and that "she should have the right to own a horse independent of him." Nobody doubts these propositions. It is not a denial of ownership that is here involved. Rather it is a denial of the privilege of racing that horse. Since it is clear that the license here denied would be denied to either spouse similarly situated, and in fact to a single person whose affinity with a convicted criminal approached the dependency here found between Mrs. Niglio and her husband, the Married Persons Act is in no wise implicated. As was said in Capodanno v. Capodanno, 58 N.J. 113, 119 (1971), "The purpose of the Married Women's Act was to secure equality for women and not special privileges." Nothing in the record before us even remotely suggests discriminatory treatment.
*186 The heart of appellant's attack on the harness racing rule in question is to be found in this paragraph from her brief:
Mrs. Niglio seeks to be self-employed in the ownership of harness horses. Clearly her rights are violated by virtue of her marital status. This clearly is a violation of her civil rights.
This calls into question the constitutionality of a rule barring the spouse of a disqualified person on the sole ground of that marital relationship. But we need not decide the constitutional question because it is clear to us that the suspension here was produced not by the marital relationship but by the inescapable dependency of Mrs. Niglio upon her husband, a disqualified person. In this respect the concern of the administrative code for the distinction between merely the married state and the married state accompanied by dependency is apparent. In the definition section of chapter 71, pertaining to harness racing, the word "disqualification" is defined. In this definition the statement appears, "The spouse of a disqualified person is likewise barred from participation." N.J.A.C. 13:71-4.1. There is no elaboration. However, in chapter 70, under the general provisions, said "to apply to * * * all matters within the jurisdiction of the New Jersey Racing Commission" (N.J.A.C. 13:70-1.1), this condition appears:
Disqualification of either husband or wife applies equally to both, unless the spouse of the disqualified person shows to the satisfaction of the Commission that ownership and racing of his or her horses are independent of or not under the control or influence of the disqualified spouse. [N.J.A.C. 13:70-4.13.]
In addition, both the general rules and the harness rules express concern for an affinity between any applicant and another person convicted of a crime. N.J.A.C. 13:70-4.9; N.J.A.C. 13:71-7.3. This concern is entirely apart from a marital relationship.
*187 We have no doubt at all that it was the dependent affinity with a convicted criminal, albeit springing from the marital relationship, which resulted in the suspension. First of all, we indulge the presumption that an administrative agency is aware of its own rules and regulations and, in the absence of evidence to the contrary more persuasive than that here, abides by them. Second, substantially all of the testimony before the hearing officer conducting the hearing for the Commission related to Mrs. Niglio's dependence on her husband. Third, it is glaringly significant that this hearing officer, unlike the steward who heard the original application from which this appeal eventuated, relied not only on the so-called chapter 4, section 9, but bottomed his recommendation on Mrs. Niglio's "inability to operate independently." Finally, it is clear that even the steward, purportedly operating under the absolute disqualification of the definition section, in explaining to Mrs. Niglio her right to appeal, recognized the pre-emption of the general rule when he said:
Well, this is your avenue of appeal * * *. This is your, this is the privileges of the law that you can appeal to the Racing Commission. If they see fit, that you are financially stable to own your own horse and no monies are derived from the income of your husband in order for you to race this horse, then there is a possibility that you might have a license. But the way it stems [sic] right now, you are his wife. The monies you receive do come from your husband.
It is undeniable that this set the tone for all that followed and provided the predicate upon which the ultimate decision was based.
Furthermore, we are satisfied that here a rule providing for disqualification on the basis of affinity with a disqualified person is not assailable on equal protection grounds.[2] A disqualifying classification such as this need only bear *188 "some rational relationship to legitimate state purposes." San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 40, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), reh. den. 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973); Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 71 N.J. 249, 280-281 (1976). Perfection in making the classification "is neither possible nor necessary"; it is enough if the classification rationally furthers the purpose identified by the state. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).
For many years we have recognized the desirability in the public interest of strict regulation of horse racing. State v. Garden State Racing Ass'n, 136 N.J.L. 173 (E. & A. 1947).
* * * The business of racing and the legalized gambling attendant thereupon are strongly affected by a public interest, and close legislative regulatory supervision is highly appropriate. * * * [Jersey Downs, Inc. v. Div. of N.J. Racing Comm., 102 N.J. Super. 451, 457 (App. Div. 1968)]
The undesirability of an association between those previously convicted of a crime or those in affinity with such a person and this sensitive "business of racing and the legalized gambling attendant thereupon," is too apparent to justify extended discussion. Certainly an appropriately strong state interest is involved and there is a rational basis for the classification imposed. State v. Krol, 68 N.J. 236, 253 (1975). Nor do we perceive a "suspect" classification, "invidious" standard or an infringement upon "fundamental" rights. Ibid.
Accordingly, the constitutionality of the definitional standard for disqualification (N.J.A.C. 13:71-4.1) need not be reviewed. We will not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation. Donadio v. Cunningham, 58 N.J. 309, 325-326 (1971).
*189 The findings that the applicant is married to one convicted of crimes, associates with him constantly and is financially dependent upon him might easily and reasonably have been reached on sufficient credible evidence in the whole record and we will not disturb them. Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973). As to the bland statement in appellant's brief that no determination has ever been made that her husband is a disqualified person, we say only that the uncontroverted, substantial and essentially conceded proof is that he has twice been convicted of crimes: unlawful possession of a weapon and aggravated assault.
We address ourselves to appellant's final point protesting the fact that she and her attorney "were not notified and did not attend the final hearing before all of the members of the Racing Commission." The only case cited in support of this position is Costanzo v. N.J. Racing Comm'n, 126 N.J. Super. 187 (App. Div. 1974).
It is notable that Costanzo did not require a hearing before the Racing Commission members sitting en banc. In fact, Costanzo refers to N.J.S.A. 5:5-51 to 61, inclusive, among which statutes is one expressly permitting the Commission to refer the "duty of taking testimony" to one or more of its members. N.J.S.A. 5:5-55. An amendment to that statute which shortly followed Costanzo added the executive director to the enumeration of those permitted to conduct the hearing. Nor does the statute require such an en banc hearing. We are satisfied that the hearing requirements of N.J.S.A. 5:5-51 to 61 were here satisfied.
Due process was also wholly satisfied. There is no doubt that the appellant was accorded the opportunity to be fully heard "at a meaningful time and in a meaningful manner." Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). Due process can be achieved even though the hearings are held by others than the entirety of those to whom is committed the final decision. Mazza v. Cavicchia, 15 N.J. 498, 504 (1954). We are *190 satisfied that the suspension here "was attended by all of the constitutional, statutory and other safeguards inherent in the requirements of due process (including a full hearing, on notice)." Costanzo v. N.J. Racing Comm'n, supra, 126 N.J. Super. at 191.
We are not insensitive to the fact that the State sought a remand while this appeal was pending and in the course of that motion appeared to concede error in the proceeding. Suffice it to say that such catharsis may well serve to produce a better administrative proceeding in the future. Our agreement that things might have been better done does not amount to a determination that such error constituted cause for a different result or deprived appellant of fairness in the process. We think it did not.
Affirmed.
NOTES
[1] This reference is to N.J.A.C. 13:71-4.1, definition 9. See the explanation by the State steward who conducted the initial hearing:

Under our rules * * * this comes under Chapter 4, under definitions under disqualification. "A person disqualified shall be barred from acting as an official or from starting or driving or otherwise participating in racing. The spouse of a disqualified person is likewise barred from participation." * * *
[2] The establishment of disqualification standards generally and the inclusion among them of the class of persons convicted of a crime or crimes is not challenged in this appeal.