Eugene EUSTER and Shirley Euster, husband and wife

v.

PENNSYLVANIA STATE HORSE RACING COMMISSION et al.

Civ. A. No. 76–3630.

United States District Court, E. D. Pennsylvania.

May 11, 1977.

Richard G. Phillips, Philadelphia, Pa., for plaintiffs.

G. Alan Kramer, Deputy Atty. Gen., Com. of Pa., Dept. of Justice, Harrisburg, Pa., for defendants.

## MEMORANDUM

GORBEY, District Judge.

This civil rights action seeking money damages is brought pursuant to Title 42 U.S.C § 1983, with jurisdiction based upon Title 28 U.S.C. § 1343, names as defendants two state agencies, Pennsylvania State Horse Racing Commission and Pennsylvania State Harness Racing Commission.

■ The complaint must be dismissed as to both Commissions under the well settled rule that a state and its agencies are not "persons" within the meaning of § 1983. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *United States ex rel. Gittle-Macker v. Philadelphia*, 413 F.2d 84 (3d Cir. 1969).

■ The complaint against the two Commissions must be dismissed for the additional reason that both are state agencies under the general and financial control of the Commonwealth. Any judgment against either would require payment from state funds and there is no allegation in the complaint that the Commonwealth has given its consent to this kind of suit. Thus, the action as respects the two Commissions is barred by the Eleventh Amendment. *Meyer v. State of New Jersey*, 460 F.2d 1252 (3d Cir. 1972).

■ The action against the defendants who are Commonwealth officials, sued in their official capacity, is barred for the reason that a claim for damages, if awarded, would necessarily have to be paid out of state funds. The Eleventh Amendment de-prives the court of jurisdiction with respect to suits against a state by citizens of another state or by citizens or subjects of any foreign state. Although the Amendment by its terms does not bar suits against a state by its own citizens, the Supreme Court has consistently held that an unconsenting state is immune from suits brought in federal courts by her own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Parden v. Terminal Ry. of Ala. St. Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ That the Commonwealth is not named as a party defendant, is immaterial because:

> "It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. In *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) the Court said: '[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants' ".
>
> *Edelman v. Jordan, supra*, at p. 663, 94 S.Ct. at 1356.

*Sarteschi v. Burlein*, 508 F.2d 110, 113 (3d Cir. 1975); *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1943); *Kennecott Copper Corp. v. State Tax Comm'n.*, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946). Thus the complaint must be dismissed for lack of subject matter jurisdiction as to defendants sued in their official capacity, Hammer, Johnson, Moyer, Gross, Hayward, Kelly, Ahwesh, Douds, Kane, Woodward and Governor Shapp.

■ This leaves the question whether any cause of action has been stated against named defendants in their individual capacities. In this circuit it is definitely established that a civil rights complaint must set forth with specificity the acts and conduct

of the defendant which are alleged to have worked an infringement of plaintiff's civil rights. *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir. 1970), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84; *Negrich v. Hohn*, 379 F.2d 213 (3d Cir. 1967); *Downs v. Department of Public Welfare*, 368 F.Supp. 454 (E.D.Pa.1973).

■ With the exception as to defendants Kelly and Woodward, the complaint contains no allegations of specific conduct which purportedly violates any constitutional rights of plaintiffs. As to them it is impossible to determine what actions, taken as individuals, are claimed to be violations of plaintiffs' civil rights. Accordingly, any actions which such defendants took, since they were identified as state officials, have been taken pursuant to their state duties, and, as previously shown, the court lacks subject matter jurisdiction.

Therefore the complaint against the aforementioned defendants in their individual capacities must be dismissed for failure to state a claim upon which relief can be granted.

A brief recital of the alleged facts is necessary for a determination as to any individual liability on the part of the defendants Kelly and Woodward. The plaintiff, Eugene Euster, is a licensed trainer of thoroughbred horses in the Commonwealth of Pennsylvania. Shirley Euster is his wife. On November 2, 1976, a horse, "Bronze Tablet", trained by plaintiff, Eugene Euster, was the winner of the second race at Keystone Race Track. Following the race the horse was taken to a detention barn at the track and an urine sample was extracted by employees of the Pennsylvania State Horse Racing Commission. Neither plaintiff nor his representative was permitted to be present at the time.

Thereafter, the specimen was allegedly transmitted to the Pennsylvania State Horse Racing Commission's laboratory for testing, and on November 4, 1976, the laboratory communicated to defendant Kelly that the test for the presence of proscribed drugs was negative. On the same date, defendant Kelly directed James Furrey, Assistant Comptroller for Continental Racing Association, to release the purse for the second race at Keystone Race Track on November 2, 1976, to the owner of "Bronze Tablet".

The complaint alleges that during the testing process, which was conducted under supervision of defendant Woodward, the urine specimen from "Bronze Tablet" was destroyed, with no allegation that it was done deliberately, in bad faith, or accidentally. The destruction would have been uneventful except for two circumstances. It is alleged that on November 17, 1976, one Robert Bork, Comptroller for the Continental Racing Association, informed James Furrey, Assistant Comptroller for the Continental Racing Association, that he, Bork, had been informed that the test performed on "Bronze Tablet" had proved positive for the presence of the drug "Arlef" and that the purse should be withheld from the owner of the horse.

On the same day, with no search and seizure warrant, employees of the Pennsylvania State Racing Commission, under the direction of defendant Kelly, raided plaintiffs' barn on the premises of the Keystone Race Track and conducted a search of a 1974 Chevrolet Nova automobile owned by plaintiff, Shirley Euster. The results of the search do not appear in the complaint.

On November 18, 1976, the Board of Stewards for the Keystone Race Track informed plaintiff, Eugene Euster, that an inquiry would be conducted on November 23 and 24, 1976, and on November 23, 1976, the complaint in this case was docketed. The complaint alleges that plaintiffs' attorney, as counsel for two other persons, at a hearing in October of 1976, had advised defendant Woodward that the destruction of specimens was a violation of the Due Process Clause of the United States Constitution. The general allegation is made that "during September, October and November of 1976, reports of inaccuracies on the part of the State Harness Racing Commission's laboratory have been myriad".

It is alleged that "As a result of the laboratory report, plaintiff, Eugene Euster,

stands in jeopardy at a hearing before the Board of Stewards, which is being conducted on November 23, 1976".

The aforementioned alleged facts are supposed to indicate that plaintiffs have been deprived of constitutional rights with resulting damages for which plaintiffs seek $3,000,000 actual and $7,000,000 punitive damages.

■ Referring now to defendant Kelly, and the search without a warrant of plaintiff, Eugene Euster's barn, there is no specificity as to the results, effect, or connection of such search with the other allegations of the complaint; also, no allegation that harm resulted. This is hardly sufficient to meet the requirements of *Kauffman v. Moss, supra,* but aside from that it would appear that a warrantless search, under the facts of this case, would not be a violation of the Fourth Amendment.

Section 15.09 of the Pennsylvania Rules of Racing provides, *inter alia* :

". . . and every person who is hereafter granted a license by the Commission, by accepting his license, does consent to such search, and to the seizure of any such hypodermic syringes, hypodermic needles or other devices, and any drugs, stimulants or narcotics, apparently intended to be, or which could be, used in connection therewith, or any appliances, electrical, mechanical, or otherwise—other than the ordinary equipment, of such nature as could effect the speed or racing condition of the horse."

If such regulation is valid, it would appear that plaintiff, Eugene Euster, had not been deprived of any constitutional rights under color of state law.

The question was before the Commonwealth Court in *Lanchester v. Pennsylvania State Horse Rac. Com'n.,* 16 Pa.Cmwlth. 85, 325 A.2d 648, 653 (1975).

". . . [W]e must conclude that the warrantless search of Appellant's vehicle on racing grounds did not violate the Fourth Amendment. Although there is no statute specifically authorizing the search, Rule 15.09 of the Commission clearly falls within its power to 'prescribe rules and regulations of *effectually preventing* the use of improper devices, the administration of drugs or stimulants, or other improper acts for the purpose of affecting the speed of horses in races in which they are about to participate'. Section 2(b)(2), Act of December 11, 1967, P.L. 707, 15 P.S. § 2652(b)(2). (Emphasis supplied). Much like the sale of liquor or firearms, horse racing in this Commonwealth is illegal outside of the limited geographic and chronologic sphere sanctioned by the Commission and regulation of horse racing and its incident gambling is deeply rooted in the police power of the Commonwealth . . ."
*Id.* at 93, 325 A.2d at 653.

The court went on to reject appellant's argument that such search infringed upon his right to privacy and stated:

"We think not. As in *United States v. Biswell, supra,* [406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87], and *State Real Estate Commission v. Roberts, supra,* [441 Pa. 159, 271 A.2d 246], by entering and continuing in a heavily regulated endeavor Appellant was aware that he would be subject to frequent and unannounced inspections. The potentiality for abusive searches is limited, and, given the obvious impossibility of *effectually* preventing the future use of illegal drugs and devices were a warrant required before a search, the governmental interest must prevail. The fact that the search here was forceable does not distinguish this case from the rationale of *Biswell* or *Colonade* [*Colonade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60] because neither the regulation here nor its enabling legislation provide as an exclusive remedy a sanction for the refusal to permit a search."
*Id.* at 94, 325 A.2d at 653.

With respect to the search without a warrant of the 1974 Chevrolet Nova, owned by plaintiff, Shirley Euster, the complaint lacks the specificity required to support a claim for damages in a civil rights case. Accordingly, the complaint of both plain-

tiffs against the defendant Kelly must be dismissed for failure to state a claim upon which relief can be granted.

The only allegation as respects defendant Woodward is that during the testing process the aforementioned specimen was destroyed. This allegation must be considered along with the allegation that he "stands in jeopardy at a hearing before the Board of Stewards", the first day of which was the day this complaint was filed. This suggests a contention that there was a denial of due process without regard to what was ultimately to be the outcome of the hearing. The hearing was the first step in a comprehensive administrative review providing for appeal to the Commission and then to the courts. In 1975, the Thoroughbred Horse Race Meeting Corporation Statute, 15 P.S. § 2651 *et seq.* and rules which were prescribed by the State Horse Racing Commission, pursuant to such statute, were the subject of litigation in *Commonwealth v. Webb*, 1 Pa.Cmwlth.Ct. 151, 274 A.2d 261 (1971), where it was held, in a well reasoned opinion, that the procedural rules with respect to notice and hearing met the constitutional requirements of due process and equal protection of the laws. Plaintiffs in their complaint do not allege that available administrative remedies would be inadequate or futile. The fear of a penalty, if the administrative process is followed, after which there is a right of access to the courts, hardly supports the conclusion that the civil rights of the plaintiff Eugene Euster had been violated. If any vitality now exists with respect to exhaustion of state administrative remedies, this would seem to be a logical case to which it could be applied. "Without a showing to the contrary, state administrators, 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances'. *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)." *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). See also *Eisen v. Eastman*, 421 F.2d 560 (2d Cir. 1969); *Canton v. Spokane School Dis-*

*trict # 81*, 498 F.2d 840 (9th Cir. 1974); *Plano v. Baker*, 504 F.2d 595 (2d Cir. 1974).

Turning now to Count II it appears that it was intended to state a claim for defamation since there is reference to the newspaper article, previously referred to, which allegedly contains "certain statements regarding plaintiff, Eugene Euster, which statements are false and which statements have caused plaintiff, Eugene Euster to be subjected to public ridicule, in particular with the horse racing industry". (Complaint, paragraph 34). Jurisdiction is invoked pursuant to the court's pendent jurisdiction authority, since no federal question is involved.

If there is no independent jurisdictional basis, the court may not exercise pendent jurisdiction over the state law claim. Whenever there is a substantial federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case, federal courts have power to adjudicate state law claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Although some of the claims in this case must be barred for lack of jurisdiction, the claims against defendants in their individual capacities were found to be within the court's jurisdiction, although they must be dismissed for failure to state a claim upon which relief can be granted. The court does, therefore, have jurisdiction to decide the state claim. 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction*, § 3567 n. 35.

While the court has jurisdiction, it also has discretion whether to dismiss the state claim. *Phillips v. Trello*, 502 F.2d 1000 (3d Cir. 1974); *Robinson v. Penn Central Company*, 484 F.2d 553 (3d Cir. 1973). " 'Where the federal element which is the basis for jurisdiction is disposed of early in the case, as on the pleadings, it smacks of the tail wagging the dog to continue with a federal hearing on the state claim.' " *McFaddin Express Incorporated v. Adley Corporation*, 346 F.2d 424, 427 (2d Cir. 1965), *cert. denied,*

382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966).

Finally, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a sure-footed reading of applicable law. (footnote omitted)  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  *United Mine Workers of America v. Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139.

Accordingly, the state claim in Count II of the complaint is dismissed without prejudice, for resolution in the state courts.