Alfred L. MOSS, Plaintiff,

v.

Hon. Benjamin WARD and Harold J. Smith, Defendants.

Civ. No. 77–301.

United States District Court,
W. D. New York.

May 4, 1978.

Alfred L. Moss, pro se.

Louis J. Lefkowitz, Atty. Gen., State of N. Y., Douglas S. Cream, Asst. Atty. Gen., Buffalo, N. Y., of counsel, for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This suit was instituted pursuant to 42 U.S.C. § 1983 by plaintiff who claims that defendant Smith violated his Eighth Amendment rights.[1] Defendant, the Superintendent at the Attica Correctional Facility ("Attica"), moves for summary judgment. Both parties have submitted affidavits and defendant has submitted copies of reports and letters he feels are pertinent to this suit.

Moss was confined to the special housing unit at Attica. He alleges that he was deprived of food for four days because he refused to turn in a plastic drinking cup. According to defendant's affidavit, the special housing unit is designed for inmates who pose disciplinary problems while among the general population. Unfortunately, however, being placed in the special housing unit does not deter many of such inmates from engaging in prohibited conduct. The guards in the special housing unit are often the object of the prisoner's frustrations. Defendant states in his affidavit that many prisoners have been fashioning crude weapons from plastic eating utensils and some prisoners have used the plastic utensils to collect urine and feces to throw at the guards. Because of this, defendant promulgated a rule which he thought would help to alleviate the problem—to wit, prisoners in the special housing unit must turn in all of their eating utensils from one meal before they will be fed their next scheduled meal. This rule is orally explained to prisoners when they are transferred to the special housing unit and plaintiff does not deny that he was informed of this rule at the time he entered the special housing unit.[2]

According to the records submitted by defendant, plaintiff refused to turn in a plastic cup[3] after his morning meal on March 23, 1975. He persisted in his refusal, claiming that he needed the cup for his dentures. (Plaintiff's affidavit at page 2.) This situation continued for four and one-half days, until March 27, 1975, when plaintiff was taken out for recreation and a guard removed the cup in his absence. Plaintiff was fed his noon meal March 27, 1975 but refused to turn in a cup, and therefore was not given his evening meal. The records do not indicate whether or not

---

**1.** The suit against defendant Ward was dismissed by an order entered November 2, 1977. "Defendant" hereinafter refers to Smith.

**2.** The rule was unwritten at the time Moss was deprived of food and according to a letter written by the Warden to Douglas Cream on November 1, 1977, the rule remains unwritten at this time. Prison officials are prohibited from punishing inmates for the violation of an unpublished or unposted rule. N.Y. Correction Law, § 138 (McKinney's Supp. 1976). This law did not become effective until September 1, 1975, a date subsequent to the events which gave rise to this litigation.

**3.** At oral argument, I raised a question concerning the composition of the cup. In his complaint, the plaintiff described the cup as being made out of "foam." The Warden's papers described the cup as being plastic. This question has never been resolved, but it is not important due to my resolution of the case.

the plaintiff turned in his cup but he was fed breakfast March 28th. However, plaintiff retained one of the bowls from that meal and was not fed at noon or in the evening. Moss did not receive breakfast or a noon meal March 29th; he then turned in his bowl and was fed an evening meal. There is a notation in the records that Moss did not return a cup on April 14th, but the records do not show what action, if any, was taken as a result of this. In sum, Moss did not receive any meals for four consecutive days and was only given one meal during each of the next three days.

On April 13, 1975, Moss ripped a piece of electrical conduit from the ceiling of one of the cells and refused to hand it over to the corrections guards. The guards asked Moss several times to turn over the item. When it became clear that he would not heed their requests, the guards asked for and received permission to use the "federal duster" (a device for gassing inmates). After receiving the required authorization, they proceeded to administer a one-second burst of gas. Moss was then taken to a shower area, decontaminated and checked by a nurse. According to Moss, he wished to use the conduit as evidence and had explained to the guards that he would give it to them if he were to get a receipt for it.[4]

Moss claims that both the denial of food and the gassing amounted to cruel and unusual punishment. He argues that defendant is responsible for these actions because defendant promulgated the rules governing each situation and oversaw the enforcement of such rules. Plaintiff has requested injunctive and declaratory relief, as well as monetary damages. Defendant has moved for summary judgment on both grounds, claiming that his actions and the conduct of the guards did not deprive Moss of any constitutional rights. Plaintiff has not cross-moved, but opposes the motion.

 A motion for summary judgment should be granted only when the pleadings, affidavits and other papers on file show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. *Poller v. Columbia Broadcasting*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Gladstone v. Firemen's Fund Insurance Co.*, 536 F.2d 1403 (2d Cir. 1976); *Egelston v. State University College at Geneseo*, 535 F.2d 752 (2d Cir. 1976); *National Life Insurance Co. v. Solomon*, 529 F.2d 59 (2d Cir. 1975). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Judge v. City of Buffalo*, 524 F.2d 1321 (2d Cir. 1975); *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975). Although the parties to a law suit may give different versions of the facts, summary judgment is not precluded unless the differences are material to the outcome of the litigation. *Kiess v. Eason*, 442 F.2d 712 (7th Cir. 1971). Summary judgment may be entered against the moving party, even if his opponent has not cross-moved. 6 Moore's Fed.Prac., ¶ 56.12 (2d ed. 1976). There is no point in insisting on procedural niceties when the proof shows that a party does not have a case. *Local 33, International Hod Carriers Building and Common Laborer's Union of America v. Mason Tenders District Council of Greater New York*, 291 F.2d 496 (2d Cir. 1961). Partial summary judgment may be issued with respect to one of several claims. 6 Moore's Federal Practice, ¶ 56.20 (2d ed. 1974). A declaratory judgment action is to be treated as any other action, and if there is no genuine issue as to any material fact, summary judgment may be issued. 6 Moore's Federal Practice, ¶ 56.17[19] (2d ed. 1974). "The existence of another adequate remedy does not preclude a judgment for declaratory relief . . . ." Fed.R.Civ.P. rule 57.

---

4. In his original complaint, Moss stated that he wanted to use the pipe (conduit) in a lawsuit he was preparing concerning the ill effects of commingling inmates having different statuses. Plaintiff never attempted to show what connection this pipe would have to the lawsuit. He did not have the right to destroy prison property to obtain "evidence".

■ The administration of a state's correctional system is the task of its executive branch. Federal courts should not interfere in the internal operations of the prisons, unless there has been an abuse of discretion amounting to a clear violation of a prisoner's constitutional or statutory rights. *Inmates of Attica Correctional Facility v. Rockefeller*, 453 F.2d 12 (2d Cir. 1971); *Haggerty v. Wainwright*, 427 F.2d 1137 (5th Cir. 1970); *Beishir v. Swenson*, 331 F.Supp. 1227 (W.D.Mo.1971). "The right to be free from cruel and unusual punishment is one of the rights that a prisoner may, in a proper case, enforce under section 1983 but what constitutes such punishment has not been precisely defined." *Beishir v. Swenson, supra*, at 1233. "The Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1957). In determining whether or not a particular punishment is cruel and unusual, the court should consider all the circumstances in question. *Schmitt v. Crist*, 333 F.Supp. 820 (E.D.Wis. 1971).

■ The imposition of punishment would violate a prisoner's Eighth Amendment rights if (1), in light of developing concepts of elemental decency, the punishment is of such a character as to shock the conscience or be intolerable to fundamental fairness or (2) it was greatly disproportionate to the offense for which it is being imposed or (3) it goes beyond what is necessary to achieve a legitimate aim—to wit, that it is unnecessarily cruel in view of the purpose for which it was used. *Jordan v. Fitzharris*, 257 F.Supp. 674 (N.D.Cal.1966). See, also, *Schmitt v. Crist, supra* at 822; *Landman v. Royster*, 333 F.Supp. 621 (E.D.Va.1971). Several courts have reached the determination that an Eighth Amendment violation exists when corrections officials impose penalties of greater severity than warranted in the circumstances of the particular case. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Wright v. McMann*, 321 F.Supp. 127 (N.D.N.Y.), aff'd in part, rev'd in part, 460 F.2d 126 (2d Cir.

1970); *Landman v. Royster, supra; Jordan v. Fitzharris, supra.* In *Wright v. McMann*, the Second Circuit Court of Appeals reversed a district court order dismissing the civil rights complaints of several prisoners, many of which alleged violations of their Eighth Amendment rights. The Court of Appeals stated that, although the prison officials were in a better position to determine what punishment might or might not be appropriate for a particular offense committed by a particular inmate, the discretion of prison officials was not limitless and that there should be some justification for severe punishment. 460 F.2d at 133. After the remand of the *Wright* case, the district court held a hearing to determine the merits of the plaintiffs' claims. One of the plaintiffs (Mosher) alleged that his Eighth Amendment rights had been violated due to his placement in segregation for refusing to sign a safety sheet. The district court upheld his claim, stating that the penalty imposed on Mosher was grossly disproportionate to the offense committed by him. Mosher had refused to sign the safety sheet because he believed he would be waiving his right to sue the state for negligence if he should be injured at his job.

■ The fact that a particular punishment may be routine procedure does not excuse the conduct of corrections officials. A number of the complaints in the *Wright* case contained allegations of Eighth Amendment violations as a result of the prison's practice of depriving inmates placed in strip cells of their clothing and toilet articles. In a footnote, in its first opinion in the *Wright* case (*Wright v. McMann*, 387 F.2d 519 (1967)), the Court discussed the warden's answer to these allegations, which in effect stated that strip cells were necessary to prison discipline and that depriving prisoners of these items was routine procedure. The justification for this procedure was that prisoners who were placed in strip cells were usually violent and often tried to harm themselves or the guards. The court stated that routine practice was not a sufficient reason for depriving prisoners of these items; the prison

officials should have made a determination that the individual prisoner "was or would become violent". 387 F.2d 519, 526 (fn. 15).

The Tenth Circuit Court of Appeals held that it was improper for a judge to take judicial notice of events at a prison and use such events as a justification for action taken by prison officials when there was no general public knowledge of the plaintiff's particular situation. *Dearman v. Woodson*, 429 F.2d 1288 (10th Cir. 1970). The prison officials had deprived the plaintiff of food and the court stated that it was necessary to know the facts surrounding the withdrawal of food before reaching a decision on the merits of the claim. During its discussion of the case, the court noted that actions which go beyond what is necessary for achieving legitimate state goals would be tantamount to cruel and unusual punishment.

In its recent decisions concerning the death penalty, the Supreme Court of the United States has held state laws mandating the death penalty for certain enumerated crimes violative of an offender's Eighth Amendment rights. The Court stated that the judge or jury must be able to take into account the circumstances of the crime when imposing punishment. *See Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).

No court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights. However, it has been noted that depriving a prisoner of food is a disfavored punishment. *Landman v. Royster, supra* at 647, relying on the American Correctional Association Manual of Correctional Standards, 417 (1966). *See, also, Finney v. Arkansas*, 505 F.2d 194 (8th Cir. 1974).

In the instant case, plaintiff was deprived of all food for four consecutive days. Although being deprived of one or two meals might not be cruel and unusual punishment, prison officials cannot impose such severe sanctions for breaking a disciplinary rule, as occurred in the instant case, on prisoners when there is no showing that the prisoner is engaging in the type of conduct the rule is designed to prevent.[5] Defendant does not claim that plaintiff threw or attempted or threatened to throw urine or feces at the guards, nor does he allege that plaintiff tried to fashion a weapon from the cup. In fact, defendant does not argue with plaintiff's claim that he wanted the cup merely as a depository for his dentures. Defendant's only justification for this action is that there was a regulation and plaintiff violated the regulation.[6]

 I hold that the conduct of the prison officials and of defendant in particu-

---

**5.** The actions taken in this case go against the policies laid down by New York's department of correctional services. The regulations governing procedures for Implementing Standards of Inmate Behavior, 7 N.Y.C.R.R. §§ 250.1 & 250.2, contain a statement concerning the general policies on discipline of inmates—to wit, that the policy of the department is to view each situation individually and to apply the appropriate discipline. Section 250.2(b) is as follows:

> "Just as the sentencing of inmates by courts, and the techniques used for correctional treatment, must be appropriately varied to fit a complex matrix of individual circumstances and individual conditions, the disciplinary techniques within a correctional facility must be appropriately varied to fit such factors as:
> (1) the particular circumstances involved;
> (2) the overall behavior pattern of the inmate; and

(3) the problems in the present atmosphere of the facility.
> Consequently, persons vested with responsibility for disciplinary measures in facilities of the department should not establish rigid structures for disciplinary sanctions, but should consider each situation individually."

In addition, only that disciplinary action necessary for the situation is to be taken (§ 250.2(c)) and disciplinary measures are not to be overly severe (§ 250.2(d)).

**6.** There were other solutions available to the prison officials. Plaintiff could have been fed foods that did not require eating utensils, such as fruit, raw vegetables and sandwiches or he could have been given his food in paper utensils. In addition, there does not appear to be any reason why plaintiff could not have been given some sort of container for his dentures.

lar violated plaintiff's Eighth Amendment rights. The punishment was grossly disproportionate to the offense and went beyond what was necessary to achieve the state's goals. The punishment authorized by the rule should have been tempered to fit the facts of this case. The qualified immunity available to executive officials in an action for monetary damages is not available in an action for declaratory relief. *Hansen v. Ahlgrimm*, 520 F.2d 768 (7th Cir. 1975); *Rowley v. McMillan*, 502 F.2d 1326 (4th Cir. 1974); *Mattis v. Schnarr*, 502 F.2d 588 (8th Cir. 1974). Defendant's motion for summary judgment on this cause of action is denied and plaintiff is granted summary judgment on his claim for declaratory relief. Injunctive relief is not appropriate in this case; my decision as to defendant's liability was based on defendant's conduct towards this plaintiff and not on the constitutionality *vel non* of the rule itself.

█ Plaintiff's entitlement, or lack thereof, to monetary relief depends upon defendant's ability to show that he is entitled to governmental immunity. In *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), it was held that officers of the executive branch have a qualified immunity "dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." Id., at 247, 94 S.Ct. at 1692. This qualified immunity was granted so that executive officials would not be unduly hampered in exercising their discretion. There is always a risk of error in official decision making and some allowance must be made for this. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The Court laid out a two-pronged test for grant-

ing immunity, part subjective and part objective—to wit, the executive official must act sincerely and with a belief that he is doing right and the actions taken cannot be a clear violation of the person's rights. Several courts have restated the objective test as whether or not officials knew or reasonably should have known that their actions would violate the constitutional rights of another. *Larkins v. Oswald*, 510 F.2d 583 (2d Cir. 1975); *Mitchell v. King*, 537 F.2d 385 (10th Cir. 1976). Although the officials in *Wood v. Strickland, supra*, were school board members, several courts have applied this standard to prison officials. *McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975); *Knell v. Bensinger*, 522 F.2d 720 (7th Cir. 1975); *Larkins v. Oswald, supra*. The United States Supreme Court recently ruled that prison officials are entitled to assert such qualified immunity. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

█ The papers of the parties did not address the issue of governmental immunity *vel non*. The better course under such circumstances is to hold a hearing wherein defendant can explain his actions and detail his knowledge (or lack thereof) of the law. At such a hearing, defendant would bear the burden of proof as to establishing a qualified immunity. *See, McCray v. Burrell, supra.*[7]

The parties are directed to appear before this court, Part II, on Tuesday, May 30, 1978 at 11:00 A.M. to set a date for a jury trial on plaintiff's claim for damages.

█ Defendant's motion for summary judgment is granted as to plaintiff's cause of action alleging a deprivation of his Eighth Amendment rights due to excessive

---

**7.** Plaintiff wrote a letter to the court September 16, 1977 complaining that he was being denied legal supplies as a result of his disciplinary confinement. A prisoner has a constitutional right of access to the courts. *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). He was under court order to supply affidavits and should not have been denied legal supplies. The prisoner should note, however, that no specific type of paper is required

and he could have written his affidavit on the lined paper he used for his letter.

Plaintiff requested that I treat his letter as a motion. I decline to do this. He is now located at Dannemora, New York and thus is under the jurisdiction of the United States District Court for the Northern District of New York. If he wishes to pursue this matter, he should file a complaint in that district.

gassing. "Force * * * is properly employed * * * in compelling obedience to lawful orders where milder measures fail * * *." *Holt v. Hutto*, 363 F.Supp. 194, 215 (E.D.Ark.1973). Plaintiff does not deny that he possessed the piece of pipe or conduit or that he refused to turn it over to the corrections officials. He claims that the gassing was excessive but does not allege any facts to support such a claim, except to state that the gallery was cleared before he was gassed. However, this appears to be a proper precaution on the part of the prison guards. There was no need to expose other prisoners to the effects of the gas. The corrections officers attempted to obtain the pipe by talking to plaintiff before they gassed him, and warned plaintiff that he would be gassed if he did not turn it over. The only other means of obtaining the pipe would have been to enter the cell, and that could have led to physical contact between plaintiff and the guards. Under these circumstances, the use of this particular force was not unreasonable. Accord, *Beishir v. Swenson, supra. See, Collins v. Schoonfield*, 363 F.Supp. 1152 (D.Md.1973); *Holt v. Hutto, supra. See, also, Long v. Harris*, 332 F.Supp. 262, 270 (D.Kan.), *aff'd per curiam*, 473 F.2d 1387 (10th Cir. 1971).

■ Plaintiff also claimed that depriving him of food without holding a prison disciplinary hearing deprived him of his due process rights—namely, "without prison due process proceedings." This claim was not addressed by the parties; therefore, I deny defendant's motion for summary judgment.[8]

So ordered.

8. This due process issue raises several problems. I question the ability of the prison officials to hold a hearing and render a determination that a prisoner may be denied food indefinitely. Such a determination may itself be an Eighth Amendment violation—it shocks the conscience. On the other hand, denial of one meal or one day's meals might not be unreasonable and does not appear to be of such a severe nature that it would deprive a prisoner of a liberty interest warranting a full disciplinary hearing.

Another problem is that the rule is of questionable legality. As stated earlier, it could not be enforced at present because it is not written. Also, certain sections of the Correction Law

and regulations contained in Part 301 of the N.Y.C.R.R. appear to forbid the state from depriving a prisoner of food as a method of punishment. *See* N.Y. Correct. Law §§ 70, 137(3) & (6) and 7 N.Y.C.R.R. §§ 301.4 and 301.8. If this is true, the enforcement of this rule, even if written, would violate a prisoner's due process rights. A governmental agency violates a person's due process rights when it renders a decision or takes an action without complying with its own regulations. *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Sneaker Circus, Inc. v. Carter*, 566 F.2d 396, 402 (2d Cir. 1977); *U. S. v. Heffner*, 420 F.2d 809 (4th Cir. 1969).