Ralph DiPIETRO, Peter D'Amato, Nicholas Raymond, Benedetto Greco

v.

The GARDEN STATE RACING ASSOCIATION and the New Jersey Racing Commission.

Civ. A. No. 78–2675.

United States District Court,
E. D. Pennsylvania.

Dec. 20, 1978.

---

William H. Bishop, Philadelphia, Pa., for plaintiffs.

Karen Ruth Larson, Deputy Atty. Gen., Trenton, N. J., for N. J. Racing Commission.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is the motion of defendant New Jersey Racing Commission ("Racing Commission") to dismiss Count V of the plaintiffs' complaint for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b), on the grounds that the Racing Commission is immune from suit in federal court by virtue of the Eleventh Amendment to the Constitution of the United States and that it has not waived that immunity. For the reasons stated below, the Racing Commission's motion to dismiss will be granted.

This controversy arises out of a fire which occurred at the Garden State Racetrack in Cherry Hill, New Jersey, on April 14, 1977. Plaintiffs' complaint invokes the jurisdiction of this Court to entertain their claims on the basis of diversity of citizenship between the parties and an amount in controversy in excess of $10,000, exclusive of costs and interest, pursuant to 28 U.S.C. § 1332(a). In Counts I through IV of the complaint, plaintiffs allege that the defendant Garden State Racing Association ("Garden State") was negligent in the operation and inspection of its racetrack premises and that it breached certain implied warranties regarding the safety of those premises. In Count V, plaintiffs allege that the defendant Racing Commission, a state agency, was negligent in regulating, licensing and inspecting the racetrack and that it breached warranties regarding the safety of the premises.

The Eleventh Amendment to the Constitution of the United States states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

On its face, the Eleventh Amendment precludes federal court jurisdiction over claims brought against a state by citizens of another state. *Ex Parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921). Furthermore, although not apparent on its face, the Eleventh Amendment also precludes federal court jurisdiction over suits brought against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Moreover, a state's Eleventh Amendment immunity to suit in federal court is not limited to cases in which it is a party of record, but extends to certain claims against its officers, agencies or instrumentalities when the state itself is the real party in interest. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Edelman v. Jordan, supra*. This immunity, however, has been held not to extend to political subdivisions of a state, such as a city or county, *Port of Seattle v. Oregon & W. R. Co.*, 255 U.S. 56, 41 S.Ct. 237, 65 L.Ed. 500 (1921), or to governmental corporations, *Hopkins v. Clemson Agricultural College of South Carolina*, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911); *Harris v. Penna. Turnpike Com'n*, 410 F.2d 1332 (3d Cir.), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1969). The determination of whether a state is the real party in interest and, thus, whether the Eleventh Amendment immunity will bar an action is often a difficult one and may turn not only upon the particular facts concerning the creation and legislative history of the entity, *Maryland Casualty Co. v. State Highway Com'n of Missouri*, 256 F.Supp. 666 (W.D.Mo.1966), but also upon ascertainment of the responsibilities, functions and powers of the entity as determined from state law sources. *Id.* Once the character of the entity is thus determined, federal law must be turned to in order to learn of the availability of Eleventh Amendment immunity. *Gordenstein v. University of Delaware*, 381 F.Supp. 718 (D.Del.1974). The Supreme Court said in *Edelman v. Jordan* :

when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Edelman v. Jordan, supra*, 415 U.S. at 663, 94 S.Ct. at 1356, *citing with approval, Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Applying that principle to facts similar to those in the case before us, this Court held in *Euster v. Penna. State Horse Racing Com'n*, 431 F.Supp. 828 (E.D.Pa.1977), that the Commonwealth of Pennsylvania was the real party in interest where the Pennsylvania Horse Racing Commission was under the general and fiscal control of the Commonwealth and where any judgment against the Racing Commission would result in the recovery of money from the Commonwealth itself. Another factor considered by the courts, in addition to general control and fiscal identity, is whether the entity functions as the "alter ego" of the state in accomplishing a public purpose. *Johnson v. Texas Dept. of Corrections*, 373 F.Supp. 1108 (S.D.Tex.1974). The *Johnson* court held that the Department of Corrections did not have an existence of its own, separate from the state, because it performed a basic governmental function; therefore, it was the "alter ego" of the state and was immune to suit in federal court. *Id.*, at 1110.

The Racing Commission is a "Division" within the New Jersey Department of Law and Public Safety, N.J.Stat.Ann. §§ 5:5–22; 52:17B–1 et seq. (West); and it is empowered to "prescribe rules, regulations and conditions under which all horse races shall be conducted in the State of New Jersey." *Id.*, at § 5:5–30. This authority has been held to be a valid exercise of the state's "police power." *Jersey Downs v. Div. of New Jersey Racing Com'n*, 102 N.J.Super. 451, 246 A.2d 146 (1968). The four mem-

bers of the Racing Commission are appointed by the Governor with the advice and consent of the New Jersey Senate. *Id.,* at § 5:5–23. In addition, the fiscal operations of the Racing Commission are closely identified with the general New Jersey State Treasury ("Treasury"). Funds received by the Racing Commission in the manner of licensing fees and fines are paid into the Treasury and become intermingled with general Treasury funds. *Id.,* at § 5:5–68. Moreover, the Racing Commission's expenses are disbursed from the Treasury. *Id.,* at § 5:5–27.

The clear meaning of the authority and responsibilities accorded the Racing Commission by the New Jersey statute is that there is fiscal identity between the Racing Commission and the state and that any judgment against the Racing Commission would, in effect, be a judgment against the state, within the meaning of *Edelman, supra,* and *Euster, supra.* Furthermore, the clear meaning of this authority and these responsibilities is that the Racing Commission, by virtue of its regulation, licensing and supervision of various parties and activities in the racing industry, pursuant to the state's police power, is clearly performing a public function. We, therefore, conclude that the Racing Commission is the "alter ego" of the State of New Jersey and that the state is the real party in interest. For these reasons, we hold that the state's Eleventh Amendment immunity prohibits this Court from exercising jurisdiction over the defendant Racing Commission.

Plaintiffs' other immunity argument is that, if immunity does exist, it has been waived because New Jersey has consented to suit in federal court by the enactment of the New Jersey Tort Claims Act ("the Act"), N.J.Stat.Ann. § 59:1–1, *et seq.* (West). In particular, plaintiffs point to § 59:4–2 of the Act which states that a "public entity is liable for injury caused by a condition of its property . . . ." However, we need not examine the applicability of this or other sections of the Act as to the facts of the case before us, because we find that, although New Jersey has con-

sented to suit for certain injuries, it has conditioned such consent upon the bringing of suit in its state court. It is well established that a state may condition consent to suit on the bringing of suit in its own state court system. *Great Northern Life Ins. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1943). As construed by the United States District Court for the District of New Jersey in *Ritchie v. Cahall,* 386 F.Supp. 1207 (D.C.N.J.1973), the Act does not waive the state's Eleventh Amendment immunity. Rather, the *Ritchie* court noted that the basic structure of the Act is to provide for continued general immunity, with specific exceptions, rather than to provide for liability with specific exceptions. *Id.,* at 1209. In support of its reasoning, the *Ritchie* court pointed to § 59:9–1, which states, in pertinent part:

> Tort claims against a public entity or employee acting within the scope of his employment shall be heard by a judge sitting without a jury in accordance with the rules governing the courts of the State of New Jersey.

The court in *Ritchie* also construed that section as having waived the state's immunity to suit in New Jersey State Courts. *Ritchie v. Cahall, supra,* 386 F.Supp. at 1209.

We agree with the *Ritchie* court's analysis of the Act. A careful reading of the Act reveals no express consent to suit in federal court. On the contrary, § 59:2–1 states that, "[e]xcept as otherwise provided by this Act, a public entity is not liable for injury . . . ." Furthermore, since the Act states categorically that all claims shall be heard "in accordance with the rules governing the courts of the State of New Jersey." *Id.,* at 59:9–1, there is no room for finding implied waiver. Rather than construing these or other sections of the Act as expressly or impliedly waiving the state's Eleventh Amendment immunity, we find that the only possible construction of the Act is that New Jersey has consented to suit in its own court system and has not consented to suit in federal court.

For the reasons stated above, we hold that the state's Eleventh Amendment immunity to suit in federal court applies to a claim against the Racing Commission; that New Jersey has not waived its immunity to suit in federal court; and that, therefore, this Court lacks jurisdiction to entertain Count V of the plaintiffs' complaint against the Racing Commission. Accordingly, the Racing Commission's motion to dismiss for lack of jurisdiction will be granted.