Miguel A. JIMENEZ

v.

**LAKELANDS RACING ASSOCIATION, INC., Thoroughbred Racing Protective Bureau and Commodore Downs Racetrack, and all employees and anyone acting in consort or in participation with said parties, Defendants,**

v.

**PENNSYLVANIA STATE HORSE RACING COMMISSION and Hart Stotter, individually and as agent for the State of Pennsylvania and Joan Pew, Additional Defendants.**

Civ. A. No. 82–133 ERIE.

United States District Court,
W.D. Pennsylvania.

July 13, 1983.

Timothy McNair, Bradley H. Foulk, Jay S. Nedell, Erie, Pa., for plaintiff.

Alton Arnold, Jr., Alvin Dillman, Jr., Pittsburgh, Pa., for defendants.

## OPINION

WEBER, District Judge.

This matter is before the court on the additional defendants' motion to dismiss plaintiff's civil rights action.

Plaintiff is a professional horse jockey employed at various racetracks in the United States. On or about May 27, 1982, he was barred from admission to the Commodore Downs Racetrack in Fairview, Pennsylvania, based on charges of alleged involvement in race fixing. This denial of admission is the basis for the lawsuit brought by the plaintiff on June 9, 1982 in Federal Court. Plaintiff has also filed a Petition for Review of the Commonwealth defendants' decision in the Commonwealth Court of Pennsylvania, which action is still pending at No. 1572 C.D.1982.

When passing on motions to dismiss, we must take as true the well-pleaded allegations of plaintiff's complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In Count I of his complaint against the Commission, plaintiff alleges that pursuant to an appropriate appeal filed with the Commission, a hearing was held to consider the denial of plaintiff's admission at the Commodore Racetrack. Plaintiff alleges that testimony was taken based upon hearsay and "other undocumented testimony" which resulted in an adjudication upholding plaintiff's ejectment from the racetrack. The adjudication was signed by Commissioner Pew who was not in attendance at the hearing. Plaintiff avers that the foregoing actions amount to a violation of his constitutional due process and equal protection rights, as well as a violation of 42 U.S.C.A. § 1983. Count II and Count III, respectively, contain like allegations against the Commissioners Stotter and Pew for their role in the hearings and their knowledge of Pew's non-participation at the hearings.

The additional defendants present three arguments in support of their motion to dismiss which the court will now consider. First, defendants maintain that the jurisdiction of the court over the Pennsylvania State Horse Racing Commission (Commission) is barred by the Eleventh Amendment to the Constitution of the United States. Second, the defendant Horse Racing Commission is not a "person" and cannot be a defendant in actions pursuant to Section 1983. And third, the Eleventh Amendment also provides immunity from monetary liability to the individual additional defendants in this case.

In considering a state's constitutional immunity from suit in federal court we look first to the Eleventh Amendment which provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by citizens or subjects of any Foreign State.

■ Accordingly, it is well settled that a state enjoys constitutional immunity from suits brought by citizens of another state, *Ex Parte New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921), and though not apparent on its face the Eleventh Amendment also precludes federal court jurisdiction over suits brought against a state by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity extends to suits asserting violations of constitutional rights, *Parden v. Terminal Ry.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), and, specifically, violations of civil rights where the state is named as a defendant. *Laskaris v. Thornburgh,* 661 F.2d 23 (3d Cir.1981). Furthermore, the Commonwealth, by statute, has expressly invoked its immunity from suit in Federal Courts and thus no waiver of immunity is involved herein.[1] The legislature has waived immunity in the instances set forth at 42 Pa.C.S.A. § 8522(b). Prevailing authority indicates, on the other hand, that the state's immunity will not extend to political subdivisions of a state or to governmental corporations. *Port of Seattle v. Oregon & W.R. Co.,* 255 U.S. 56, 41 S.Ct. 237, 65 L.Ed. 500 (1921), *Hopkins v. Clemson Agricultural College of South Carolina,* 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911); *Harris v. Pennsylvania Turnpike Commission,* 410 F.2d 1332 (3d Cir.1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1969).

The question before the court in its consideration of defendants' first demurrer is whether the Commonwealth's immunity extends to its constituent agency, namely, the Pennsylvania Horse Racing Commission.

■ The issue of whether the Commission is to be treated as an arm of the Commonwealth sharing its Eleventh Amendment immunity turns, in part, on "the nature of the entity created by state law." *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). The particular facts concerning the creation and legislative history of the entity may be augmented, for purposes of determining whether immunity attaches, by the responsibilities, functions and powers of the entity as determined by state law. *DiPietro v. Garden State Racing Association,* 463 F.Supp. 574, 576 (E.D.Pa. 1978).

■ The Commission under consideration is established by statute at 4 P.S. § 325.201 as a departmental administrative commission within the Commonwealth's Department of Agriculture. The legislature has granted the Commission general jurisdiction over all parimutuel thoroughbred horse racing activities in the Commonwealth. The Department of Revenue is charged with the financial administration of parimutuel wagering under the Race Horse Industry Reform Act, 4 P.S. § 325.101, et seq. Act of Dec. 17, 1981, P.L. 435, No. 135, Ch. 1, § 101.

Pursuant to its statutory powers, the Commission may adopt rules and regulations to affect the purpose of the Act. The powers of the Commission are limited, however, and its autonomy is checked by a variety of provisions setting forth strict parameters regarding the allocation of racing days, the number of horse racing corporations, the licensing of horse racing meetings, and the licensing of trainers, jockeys, drivers and horse owners. *See,* 4 P.S. 325.-202 et seq. The statutory scheme indicates that the Commission operates as an arm of the Commonwealth and thereby shares the Commonwealth's immunity from suit in Federal Court.

Moreover, the Commission is made subject to the sunset provisions of state law

---

1. The Judiciary Repealer Act of 1980, 42 Pa.C.S.A. § 8521(b) provides:

Federal courts—Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal Courts guaranteed by the Eleventh Amendment to the Constitution of the United States.

under a legislative scheme that defines the word agency as "any statutory authority, agency, board, bureau, commission, committee, council, department, division, office or *any similar unit of Government.*" 71 P.S. § 1795.2.

Plaintiff offers a compelling argument that the Commission is not the alter ego of the state since he would not, were he successful in this lawsuit, be entitled to collect an award from the general fund of the state. Plaintiff argues that the operating funds of the Commission, those derived from such sources as licensing, admission, taxes and percentage of the handle, are not commingled with other funds of the state. In addition, the Commission's operating fund is allocated by virtue of Commission discretion to various state funds including a grant to public education and the cities. Plaintiff's brief pg. 3.

Plaintiff relies on *DiPietro* to show that the treatment of funds that were generated by the New Jersey Racing Commission vis a vis the State of New Jersey, was significant in assessing the autonomy of the Commission. In *DiPietro,* the court held that Commission funds are "intermingled with general Treasury Funds". 463 F.Supp. at 577. The court further concluded that "the clear meaning of the authority and responsibilities accorded the Racing Commission by the New Jersey statute is that there is fiscal identity between the Racing Commission and the state and that any judgment against the Racing Commission would, in effect, be a judgment against the state, within the meaning of *Edelman...*" 463 F.Supp. at 577. We find *DiPietro* to be adequate commentary on the law but we find little in it to support plaintiff's position. First, the court in *DiPietro,* in considering a similar statutory scheme, found sufficient identity between the Commission and the state. Second, the court in *DiPietro* did attach significance to other factors respecting the role and responsibilities of the entity besides its fiscal identity.

In *Euster v. Pennsylvania State Horse Racing Commission,* 431 F.Supp. 828 (E.D. Pa.1977), the court held that the Pennsylvania State Horse Racing Commission, similarly, was an agency under the "general and financial control of the Commonwealth." The court noted:

> Any judgment against either [agency] would require payment from state funds, and there is no allegation in the complaint that the Commonwealth has given its consent to this kind of suit. Thus, the action as respects the two Commissions is barred by the Eleventh Amendment. 431 F.Supp. at 830.

We further note that the allocations made by the Commission alluded to in plaintiff's brief, such as the Breeding, Stakes, and Fair funds are to be accomplished in accordance with the detailed guidance provided in the act. We find that the autonomy attributable to the Commission by virtue of its handling of the funds is *de minimis.*

For the foregoing reasons we conclude that the Commission shares the immunity accorded the Commonwealth and plaintiff's complaint with respect to the Commission will be dismissed.

■ Furthermore, we have found that the law is well settled that the Commission, as an agency of the Commonwealth, is not a "person" within the meaning of Section 1983. *See, e.g., Euster,* 431 F.Supp. at 830 (E.D.Pa.1977); *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963, 974 (E.D.Pa.1977).

Finally, the court must consider whether the Eleventh Amendment also provides immunity from monetary liability to the individual defendants named in Counts II and III of Plaintiff's Complaint Against Additional Defendants.

Plaintiff argues that the defendants exceeded the scope of their legitimate discretion and under the color of state law deprived him of federal rights. Accordingly, plaintiff argues that the defendants are not entitled to share in the Commonwealth's immunity.

■ An action against Commonwealth officials sued in their official capacities is barred by the Eleventh Amendment for the reason that any damages would have to be paid out of state funds. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Parden v. Terminal Ry.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). If plaintiff's complaint is to survive at all it must state a cause of action against the defendants in their individual capacities. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Helfrich v. Commonwealth of Pennsylvania, Department of Military Affairs,* 660 F.2d 88, 90 (3d Cir.1981). To that end plaintiff must set forth in his complaint, with specificity, the acts or conduct of the defendants which have violated his civil rights. *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.1970), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Euster v. Pennsylvania State Horse Racing Commission,* 431 F.Supp. 828 (E.D.Pa.1977). The Supreme Court in *Scheuer* held that when a state officer acts under state law in a manner which violates the Federal Constitution he comes into conflict with the superior authority of the Constitution, and accordingly, is stripped of his official character and thereby subjects himself to personal liability. The Court concluded that the state could not impart to him immunity from the laws of the United States. 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90. Moreover, the doctrine of immunity, qualified or absolute, has been held to be a product of judicial determination in the civil rights context and involves the balancing of the need to assure the unfettered fulfillment of an official duty with the need to insure that the rights of individuals can be protected. *Allred v. Svarczkopf,* 573 F.2d 1146 (10th Cir.1978). The legal test for determining whether an official is entitled to immunity is whether, a) the official knew that the right violated was an established constitutional right at the time of the challenged conduct; b) whether a reasonable person in the official's position would have appreciated the right, and c) whether a reasonable person in the official's position would have known that his conduct would violate the right. *Space Age Products, Inc. v. Gilliam,* 488 F.Supp. 775, 785 (D.Del. 1980). In addition, official or quasi-official immunity has been held not to shield liability for acts committed against an individual. *Brown v. Fairview State Hospital,* 386 F.Supp. 607 (E.D.Pa.1974). Moreover, to enjoy a qualified immunity, an official must demonstrate that a) he acted in good faith and b) that the acts taken are not a clear violation of the person's rights. *Moss v. Ward,* 450 F.Supp. 591 (W.D.N.Y.1978). Courts have also held that state racing commissioners generally act under the color of state law for purposes of Section 1983. *See, e.g. Puntolillo v. New Hampshire Racing Commission,* 390 F.Supp. 231 (D.N.H. 1975).

Plaintiff's allegations against the defendants can be separated for purposes of analysis into two parts. First, the court considers the participation of the defendants in the conduct of a hearing to which the plaintiff has taken exception on the basis of the admittance of objectional and speculative evidence. Second, the plaintiff maintains that the defendants acted improperly in issuing an opinion signed by Commissioners Stotter and Pew when it was known to both individual defendants that Pew was not present at the hearing.

■ As to the first allegation against the individual defendants, the court notes that the statutory framework grants the Commission discretion in the handling of such hearings. The hearings need not be held subject to formal set of evidentiary rules. The Commission, of course, is required to hold a hearing and, in so doing, to exercise proper discretion. Certainly, it would be improper for the Commission to affirm a denial of admission on no evidence or on the basis of patently incredible evidence. We do not find that the hearing as conducted runs so far afoul of the statutory mandate

governing the Commission to warrant the imposition of individual liability on the defendants based upon their participation in the hearing process. The Commissioners, moreover, functioned in their official capacities in holding a hearing to consider plaintiff's appeal of his denial of admission. We do not find that in conducting the hearing that the Commissioners so abused their discretion as to remove themselves from the Commissioners' coverage of immunity under the Eleventh Amendment that they share as the Commonwealth's officials.

■ We turn to the second allegation against the individual defendants, namely, the appearance of Commissioner Pew's signature on the adjudication upholding plaintiff's ejectment on June 17, 1982 in light of her non-appearance at the evidentiary hearing which considered the matter. Plaintiff alleges that there was "no basis in law and in fact for her [Commissioner Pew] signing the adjudication." Consequently, plaintiff avers that the defendants have acted well beyond their lawful authority and should be held individually liable for the infringement of plaintiff's federal rights.

The individual defendants for their part argue that they acted in their official capacities in the issuance of the adjudication and that "quasi-judicial immunity extends to those quasi-judicials performing adjudicatory or otherwise judgmental functions." *Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53, 59–61 (3d Cir. 1976); (*in banc* hearing on remand); *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

We reiterate that we must take as true the well-pleaded allegations of plaintiff's complaint. In so doing, we find that plaintiff has stated a valid cause of action against the individual defendants in their individual capacities. Plaintiff has alleged sufficient specific circumstances to support his allegation that Commissioner Pew stepped out of her official role and its attendant immunity in ruling upon the adjudication of plaintiff's expulsion absent a transcript with which the Commissioner might have reviewed proffered testimony. Likewise, a valid cause of action is stated against Commissioner Stotter by virtue of his knowledge and understanding of Pew's role as it relates to her review and participation in the adjudication.

Accordingly, defendants' motion to dismiss plaintiff's complaint against the individual additional defendants will be denied.

Pending resolution of plaintiff's petition for review in the Commonwealth Court, the docket in this matter will be marked closed until such time as further proceedings become necessary.