**BELPAR MARINE, INC., Plaintiff,**

v.

**ADAMS & PORTER INCORPORATED and Marine Transport Management Co., Defendants.**

**No. 84 Civ. 8093.**

United States District Court, S.D. New York.

June 30, 1986.

Graham & James, New York City, for plaintiff; by Gary W. Christian, Victor C. Murphy, Washington, D.C.

Purrington, McConnell & Agus, New York City, for defendants; by Stephen A. Agus.

CEDARBAUM, District Judge.

This is a diversity action in which plaintiff Belpar Marine, Inc. ("Belpar"), seeks recovery on four claims. For its first claim, Belpar alleges that defendants Marine Transport Management Co. ("MTM") and Adams & Porter, Inc. ("Adams & Porter") breached a contract of insurance by arranging the distribution of certain proceeds under the policy contrary to the terms of the policy. Belpar's second claim alleges that MTM was unjustly enriched through its receipt of payment of $385,000 under the insurance policy. The third claim asserts conversion by MTM of the M/V PINEY POINT ("Piney Point") by allowing it to sink so that MTM could collect under the insurance policy. Belpar's fourth claim sounds in fraud, alleging that the defendants conspired to obtain insurance for the Piney Point in an amount far in excess of MTM's insurable interest. Adams & Porter is alleged to have participated in the scheme to obtain its commission as insurance broker.

This matter comes before the court on cross-motions for summary judgment. Belpar has moved for partial summary judgment in its favor on its claim for unjust enrichment. MTM has cross-moved for summary judgment in its favor on all four of plaintiff's claims. Belpar has decided to withdraw its third and fourth claims. Accordingly, the summary judgment granted on the first and second claims entirely resolves the dispute between Belpar and MTM. My legal conclusions on these cross-motions are based entirely on the material facts on which the parties agree. And the parties agree that summary judgment is the appropriate method for deciding this case.

*Statement of Facts*

This dispute arises from the charter and subcharter of a U.S. flag ocean-going tugboat, the Piney Point, and her subsequent loss while under subcharter to Belco Petroleum Corporation of Peru ("Belco"). Belco is not a party to this action. The following facts are either taken from plaintiff's 3(g) statement of the undisputed facts or are evidenced by documents which are undisputed. On July 24, 1980, Belpar and MTM entered into a bareboat charter ("Charter") of the Piney Point. The initial charter period was six months with an unlimited option to renew on thirty days notice prior to the expiration of the current charter period. The charter hire rate was $400 per day. Under the terms of the Charter, MTM was required to obtain "Full Form Hull Insurance" on the Piney Point in the amount of $325,000, "the full value of the boat, as the case may be for the purposes hereof" (Charter ¶ 5).

According to the survey of Russell Brierly & Associates, as of July 29, 1980, the market value of the Piney Point was $400,000 and its replacement value was $700,000.

On July 29, 1980, MTM entered into a bareboat subcharter agreement bearing the title "Bareboat Service Contract" ("Subcharter") to hire the Piney Point to Belco for a period of six months commencing on August 21, 1980, with an option to renew for successive six-month periods on forty-five days notice to MTM. The Subcharter required Belco to obtain "Full Form Hull Insurance" at Belco's expense in the amount of $750,000, "the full value of the tugboat" (Subcharter ¶ 5). Pursuant to the

Subcharter, Belco obtained insurance on the Piney Point in the amount of $750,000 by Endorsement 1027 to Belco's Marine Hull Policy 2761 with El Pacifico Compania de Seguros y Reaseguros of Lima, Peru ("El Pacifico"). The named insureds under this policy were Belco, Belpar and MTM.

On August 18, 1980 Belpar executed an agreement in favor of the First State Bank of Miami ("Bank of Miami") whereby it agreed to "sell, assign, transfer, and set over to BANK, all its right, title and intrest (sic) in and under the Bareboat Charter ... together with all rents, issues, profits, revenues, royalties, rights and benefits due or to become due thereunder." Belpar made the assignment as additional collateral for a First Preferred Ship Mortgage on the vessel. By letter dated September 24, 1980, Bank of Miami notified MTM that MTM was to pay all monies due Belpar for use of the Piney Point directly to Bank of Miami.

On September 25, 1980, the Piney Point was lost at sea off the coast of Peru. Belco filed a claim with El Pacifico for total loss of the vessel. By letter dated November 6, 1980, MTM confirmed to Belco, with a copy to Adams & Porter, that the distribution of the insurance proceeds would be to Bank of Miami in the amount of $325,000 as mortgagee on the vessel; to Belco in the amount of $40,000 for equipment added to the vessel; and to MTM, as loss payee of the vessel, in the amount of $385,000. An authorization form dated November 7, 1980 which directs the insurer to pay to the insurance broker the sum of $750,000 was signed on behalf of MTM, on behalf of Belco, and on behalf of the Bank of Miami. The insurance proceeds were distributed by Adams & Porter in accordance with MTM's instructions.

Although disputed by MTM, I assume for purposes of this motion, as plaintiff asserts, that at no time prior to the distribution of the proceeds did MTM advise Belpar that the vessel had in fact been insured for $750,000 or that MTM had received $385,000 from the proceeds of the insurance.

Belpar moves for summary judgment on the ground that the excess proceeds, the $385,000 distributed to MTM, rightfully belong to Belpar, as the owner of the Piney Point. Its claim rests on the theory that if a beneficiary of an insurance policy receives a greater distribution than it is entitled to, the excess is held for the benefit of the other insureds. MTM answers that Belpar received exactly what it bargained for—$325,000 in insurance proceeds, which was the stipulated loss value of the vessel in the charter agreement—and that Belpar has no legal right to any more.

*Summary Judgment is Appropriate on the Facts of this Case*

In order to grant summary judgment, the court must determine that there are no genuine issues of material fact and that, as a matter of law, the moving party is entitled to judgment. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69 (2d Cir. 1984). The burden is on the moving party to show that there are no genuine issues of fact, and all ambiguities are to be resolved in the light most favorable to the party opposing the motion. *U.S. v. One Tintoretto Painting, Etc.*, 691 F.2d 603 (2d Cir. 1982). The fact that the parties give differing versions of the facts does not in and of itself preclude the granting of summary judgment unless the differences are material to the outcome of the litigation. *Moss v. Ward*, 450 F.Supp. 591 (W.D.N.Y.1978).

It is in accordance with these standards that I have determined that MTM is entitled to summary judgment in its favor on its cross-motion to dismiss plaintiff's first and second claims, and that plaintiff's motion for partial summary judgment in its favor must be denied.

*Plaintiff Cannot Prove An Actionable Injury*

In order to recover on a claim for unjust enrichment, the plaintiff must prove that the defendant has been enriched, that such enrichment was at the plaintiff's expense, and that the circumstances are such that in "equity and good conscience," the defendant should return the money or property to the plaintiff. *Dolmetta v. Uin-*

*tah National Corp.*, 712 F.2d 15, 20 (2d Cir.1983). Plaintiff contends that if MTM is permitted to retain that portion of the insurance proceeds which exceed its insured interest as charterer of the vessel, then MTM would be unjustly enriched. Plaintiff claims that under a marine hull insurance policy, coverage is limited to protection against damage to or loss of the vessel. Accordingly, it argues that without an ownership interest, defendant had no insurable interest that was covered by the hull policy. Under the terms of the policy, the named insureds are covered "as interest may appear." Belpar argues from this language that MTM holds the proceeds as a trustee for Belpar, and is obligated to forward them to Belpar since Belpar, as the owner of the vessel, is entitled to all of the hull insurance proceeds.

The plaintiff required MTM, as a condition of its charter, to maintain hull insurance in the amount of $325,000, which plaintiff described as "the full value of the boat." Nothing prevented plaintiff from getting a higher appraisal, as defendant did, or from requiring the charterer to obtain insurance for the full replacement value of the vessel. It did not do so, however. MTM chose to insure the vessel for $750,000, and in its subcharter with Belco, it required Belco to procure such coverage. MTM claims that its reason for obtaining the excess insurance was to protect its long-term interest in the vessel under an indefinitely renewable charter.

■ These cross-motions raise a novel question on which neither party has found a case directly in point. While defendant was in fact enriched by the loss of the tug, it cannot be said that it has been enriched at plaintiff's expense. If defendant had insured the boat for the agreed $325,000, plaintiff would have been in exactly the same financial position in which it now finds itself. It would not, and could not, claim that it had been deprived of money to which it was entitled. How then can Belpar claim that it has suffered a loss be-cause defendant created a fund that it was not obligated to provide?

Essentially, plaintiff relies on the theory of its claim for breach of the insurance contract to provide the missing element of enrichment at its expense. Plaintiff argues that as a named insured, it is analogous to a third party beneficiary, and is entitled to enforce in its own behalf the language of the insurance policy, "as interest may appear." Plaintiff's position is that its ownership interest entitles it to all proceeds of the hull insurance policy except the amount attributable to the loss of equipment installed by the subcharterer.[1] Belpar contends that MTM's loss of potential earnings was not a loss of an interest covered by the hull policy.

Plaintiff relies on *In re Huselton's Estate*, 135 Misc. 56, 237 N.Y.S. 531 (Surr.Ct. N.Y. County 1929), as support for its contention that MTM is liable to it for the additional $385,000. *In re Huselton's Estate* holds that where an individual collects the proceeds of an insurance policy payable "as interests may appear", he may be compelled "to account for such portion which exceeds his interest, to the other person or persons interested in the insurance." *Id.*, 237 N.Y.S. at 532. *Symmers v. Carroll*, 207 N.Y. 632, 101 N.E. 698 (1913), on which plaintiff also relies, stands for a similar proposition. In *Carroll*, a steamboat owner insured cargo in his care which was destroyed by fire. A federal court determined that the carrier was not liable for the loss of the merchandise destroyed by fire on the vessel. The carrier subsequently collected the whole amount of the proceeds under his fire insurance policy, and was sued for insurance proceeds by an owner of goods that had been destroyed in the fire. The fire insurance policy was issued in the name of the carrier "for the account of whom it may concern." The court held that "[w]hen the carrier receives the proceeds of the policy of insurance for the account of whom it may concern, he holds the money as trustee for those concerned." *Id.* at 637. It then became the

---

1. Belpar does not dispute Belco's right to the $40,000 it received.

named insured's duty to prove the items of his own loss, and, after paying himself, to divide the remaining insurance money among the owners of the cargo "according to their respective rights and interests." *Id.* at 638.

In the cases cited, a single insured was named as representative of a class of unnamed insureds. In this case, all the insureds, including plaintiff, were specifically named, and each received its designated share of the proceeds. Moreover, in those cases there was no contract among the insureds expressly defining their insurance obligations to each other, and stipulating the amount of insurance proceeds to which the plaintiff was entitled. In this case, the charter agreement between Belpar and MTM governs their mutual obligations with respect to hull insurance. In the absence of fraud, and none is alleged here, freely negotiated agreements are binding on the parties to them. The interest of Belpar in the loss of the Piney Point was expressly valued by Belpar in its contract with MTM at $325,000. That is Belpar's "interest as it appears" with respect to MTM. Since Belpar received the full amount for which it contracted with MTM, Belpar cannot charge MTM with breach of contract.

The fundamental flaw in both the contract and the unjust enrichment claims is that plaintiff has not been damaged. Plaintiff concedes that under its agreement with MTM, MTM's only obligation with respect to loss of the Piney Point was $325,-000 of insurance. Plaintiff also admits that if MTM had not received a benefit that Belpar had not anticipated, plaintiff would have no claim. Thus, plaintiff's claims are not bottomed on any loss by plaintiff, but rather on a windfull to defendant.

I find that on plaintiff's own version of the facts, plaintiff cannot establish its entitlement to recover damages from MTM under either of its two claims for relief. Therefore plaintiff's motion for partial summary judgment is denied, and defendant MTM's cross-motion for judgment in its behalf is granted.

The Clerk is directed to enter judgment dismissing the complaint as against defendant Marine Transport Management Co.

SO ORDERED.